JONATHON M. MARK,

                    Plaintiff,

       v.                                          Case No. 25-cv-259-pp

JENNA BAUMGARTNER, *et al.*,

                    Defendants.

**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND TO ALTER OR AMEND JUDGMENT (DKT. NO. 12) AND DENYING AS MOOT PLAINTIFF'S MOTION FOR EXTENSION OF TIME (DKT. NO. 11)**

Plaintiff Jonathon M. Mark, who is confined at the Wisconsin Secure Program Facility[1] and is representing himself, filed a complaint under 42 U.S.C. §1983. In October 2025, the court screened the complaint under 28 U.S.C. §1915A and dismissed it for failure to state a claim. Dkt. No. 9. The plaintiff since has filed a "Motion for Reconsideration and Alter or Amend Judgment" under Federal Rule of Civil Procedure 59(e), in which he contends that the court erred in dismissing the case without giving him leave to file an amended complaint. Dkt. No. 12. He also has filed a motion for an extension of time to appeal. Dkt. No. 11. This order denies the plaintiff's Rule 59(e) motion and denies as moot his motion for an extension of time to appeal.

---

[1] When he filed these motions, the plaintiff was at the Fond du Lac County Jail. See Dkt. No. 11-1. The Wisconsin Department of Corrections Locator website shows that on April 6, 2026, he was transferred to the Wisconsin Secure Program Facility. https://appsdoc.wi.gov/lop/details/detail (for "Mark, Jonathon M," register #00330078).

## I. Rule 59(e) Standard of Review

"Rule 59(e) allows a court to alter or amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence." Obriecht v. Raemisch, 517 F.3d 489, 494 (7th Cir. 2008) (citing Sigsworth v. City of Aurora, 487 F.3d 506, 511-12 (7th Cir. 2007)). Whether to grant a motion to amend judgment "is entrusted to the sound judgment of the district court." In re Prince, 85 F.3d 314, 324 (7th Cir. 1996).

The plaintiff's motion does not identify any newly discovered evidence. This means that under Rule 59(e), he is entitled to relief only if he can demonstrate that the court's rulings constituted a manifest error of law. A "manifest error of law" "is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Oto v. Metro. Life Ins. Co., 224 F.2d 601, 606 (7th Cir. 2000) (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

## II. Discussion

In his complaint, the plaintiff alleged that he received a major conduct report for disobeying orders after he refused to move from a "max dorm" (Section F) to a "high medium" dorm (Section B) at the Fond du Lac County Jail on December 22, 2024. Dkt. No. 1 at 2. The plaintiff alleged that the jail and the Fond du Lac County Sheriff's Department have a custom of placing an individual on "loss of privileges status" without due process. Id. at 3. Under this status, an incarcerated person allegedly loses all privileges from the date

2

on which he receives a conduct report until the hearing on that report, which usually is three to five days later. Id. The plaintiff alleged that he was a pretrial detainee and that defendant Baumgartner placed him on this status from December 22, 2024 until the plaintiff's disciplinary hearing was held on December 26, 2024. Id. The plaintiff claimed that Baumgartner violated his due process rights by providing false information so that the plaintiff would violate a jail rule, which initiated the disciplinary process and resulted in a major conduct report. Id. He also claimed that his due process rights were violated when he was placed on "no privileges status" from December 22 through December 26, 2024 without due process. Id.

At screening, the court determined that the complaint failed to state a claim:

> "[A] pretrial detainee cannot be placed in segregation as punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less." Higgs v. Carver, 286 F.3d 437, 438 (7th Cir. 2002) (citing Bell v. Wolfish, 441 U.S. 520, 535-41 (1979); Rapier v. Harris, 172 F.3d 999, 1002-06 (7th Cir. 1999)). But a pretrial detainee can be "placed in segregation not as punishment, but for managerial reasons" without being entitled to any process. Higgs, 286 F.3d at 438 (citing Bell, 441 U.S. at 535-41); Rapier, 172 F.3d at 1002-06. "Managerial reasons" could include overcrowding, protecting a detainee from himself or other incarcerated individuals or to protect jail staff from the detainee's "violent propensities." Higgs, 286 F.3d at 438. "[A] particular measure amounts to punishment when there is a showing of express intent to punish on the part of the detention facility officials, when the restriction or condition is not reasonably related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." Rapier, 172 F.3d at 1005.

> The plaintiff alleges that after he received the conduct report for disobeying orders on December 22, 2024, he was placed on loss of privileges status until his December 26, 2024 disciplinary hearing. At the disciplinary hearing, the plaintiff allegedly told the

3

hearing officer that Baumgartner had falsely told him that recently there had been a fight on Section B and that he should refuse to move there. The hearing officer dismissed the conduct report, and the plaintiff was moved to Section B. The plaintiff states that he was placed on loss of privileges status from December 22 through 26, 2024 without due process, in violation of his constitutional rights.

The Court of Appeals for the Seventh Circuit has determined that pretrial detainees are not entitled to pre-deprivation hearings, which means that pretrial detainees may be removed from the general population before receiving a hearing. In Holly v. Woolfolk, 415 F.3d 678, 680 (7th Cir. 2005), the court of appeals determined that a pretrial detainee who spent two days in solitary confinement without a prior hearing did not state a due process claim. The court analogized the period before the disciplinary hearing to pretrial detention following an arrest and held that the hearing the pretrial detainee received forty-eight hours after his placement in solitary confinement was all the process that was due him. Id. at 681 ("Due process permits an arrest without a previous hearing because it is dangerous to allow a person who the police have probable cause to believe has committed a crime to roam at large while awaiting a hearing. It is equally dangerous to allow a prisoner who the guards have probable cause to believe has violated a disciplinary rule to roam at large in the general jail population."). "[T]he isolation of a prisoner pending investigation of misconduct charges against him serves important institutional interests . . ." Id. (quoting Hewitt v. Helms, 459 U.S. 460, 473-74 (1983)).

The plaintiff alleges that he moved from the "max dorm" to spend four to five days on loss of privileges status pending his disciplinary hearing. The law does not require that he receive a pre-deprivation hearing before being placed on loss of privileges status. The defendants did not violate the plaintiff's due process rights based on the failure to hold a hearing.

Dkt. No. 9 at 5-7. The court also determined that Baumgartner's alleged false statement to the plaintiff that there had been a fight in Section B and that he should refuse to move there did not implicate the plaintiff's substantive due process rights. Id. at 8.

The court determined that it would be futile to allow the plaintiff to file an amended complaint regarding his claim that he was placed on loss of

4

privileges status without a hearing because the applicable case law establishes that pretrial detainees do not have a constitutional right to a pre-deprivation hearing pending a disciplinary hearing on a conduct report. Id. The court also determined that it would be futile for the plaintiff to file an amended complaint regarding his claim that Baumgartner violated his right to substantive due process.[2] Id.

In his motion to reconsider, the plaintiff argues that the court erroneously assumed that his placement on no privileges status was for managerial reasons. Dkt. No. 12 at 2. He clarifies that he did not transfer to a different unit, such as a disciplinary unit, but remained in his cell in the "max dorm" (Section F) while on no privileges status. Id. The plaintiff asserts that his placement on no privileges status was intended as punishment. Id. He says that he lost video visits, phone use, email and the ability to write letters to family and friends. Id. The plaintiff states that he was denied books and publications as well as use of his tablet, which prevented him from reading a religious book. Id. He says that "jail staff did not put anyone else on a 'no privileges status', no other jails do this, and the prisons do not do this[.]" Id.

Contrary to the plaintiff's assertion in his motion to reconsider, the court did not assume that he was placed on loss of privileges status solely for managerial reasons. The court said that the plaintiff was placed on that status

---

[2] The court referenced the plaintiff's long history of filing civil rights cases in the Eastern District of Wisconsin (he has filed forty-four cases here since 2005) and recounted that the plaintiff owes the court $7,684.89 in filing fees from those cases. Dkt. No. 9 at 9.

pending the disciplinary hearing on his major conduct report, as is the jail's custom. And the plaintiff alleged in his complaint that when incarcerated persons at the jail receive a major conduct report for refusing to move to a different section within the jail, they are placed on loss of privileges status until the hearing on that conduct report, which usually is three to five days later. Dkt. No. 1 at 3.

As stated above, the plaintiff clarifies in his motion that his placement on loss of privileges status did not involve movement to a different unit, such as a segregation unit. The plaintiff allegedly spent four to five days on loss of privileges status pending his disciplinary hearing for a major conduct report. Under Holly v. Woolfolk, 415 F.3d at 680, the jail was not required to conduct a pre-deprivation hearing before placing the plaintiff on loss of privileges status. The defendants did not violate the plaintiff's due process rights based on the failure to hold a hearing.

At screening, the court acknowledged that although its usual practice is to give a plaintiff an opportunity to amend a complaint, it need not do so where the amendment would be futile. See Zimmerman v. Bornick, 25 F.4th 491, 493-94 (7th Cir. 2022) (instructing that a district court should give a plaintiff representing himself an opportunity to amend his complaint unless it is "certain that amendment would be futile or otherwise unwarranted"). The plaintiff has not shown that the court erred by not giving him an opportunity to file an amended complaint. The court will deny the plaintiff's motion to alter or amend judgment.

Finally, the plaintiff asked for an extension of time to appeal. Dkt. No. 11. The period for filing a notice of appeal starts on the date of this court's order denying this motion to alter or amend the judgment. <u>See</u> Fed. R. App. P. 4(a)(4)(A)(iv). There is no need for an extension, and the court will deny as moot the plaintiff's motion for extension of time.

### III. Conclusion

The court **DENIES** the plaintiff's motion for reconsideration and to alter or amend judgment. Dkt. No. 12.

The court **DENIES AS MOOT** the plaintiff's motion for extension of time to appeal. Dkt. No. 11.

Dated in Milwaukee, Wisconsin this 19th day of May, 2026.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

7